Theodore A. SAGGIO,
Plaintiff/Appellant,

v.

CITY OF ARNOLD,
Defendant/Respondent.

No. 58210.

Missouri Court of Appeals,
Eastern District,
Division One.

Nov. 20, 1990.

James Koester, St. Louis, for plaintiff/appellant.

William T. Kacerovskis, St. Louis, for defendant/respondent.

GRIMM, Judge.

Theodore A. Saggio appeals the dismissal of his personal injury action against the City of Arnold. In his petition, he alleges city was liable for injuries he sustained while working for a subcontractor on the construction of a new city hall. Concluding the petition pleads the collateral negligence of the contractor rather than an inherently dangerous activity, the trial court dismissed the petition. We affirm.

## I. Facts

Based on Saggio's petition, the facts are as follows. City hired a general contractor to build a new city hall. That general contractor employed a subcontractor to do the brick work. Saggio, a bricklayer, worked for this subcontractor.

On May 10, 1988, Saggio was working on scaffolding laying brick. One of the general contractor's employees was working on a roof above Saggio. This employee "caused a $2 \times 4$ piece of lumber to fall," striking Saggio's neck and back.

Saggio's petition alleges the general contractor and subcontractor's work "involved the inherently dangerous activity of individuals working on scaffolding above which other employees were working with loose lumber and material." He further alleges: (1) "the activity of those individuals working above [Saggio] which caused damage to [him] was reasonably necessary to the performance of the contract and was inherently dangerous;" (2) he was "working on said scaffolding with no overhead protective covering;" (3) the city "carelessly and negligently failed to insure that adequate precautions were taken to avoid a damage (sic) by reason of the inherently dangerous activity;" and (4) the city "carelessly and negligently failed to take precautions against the risk of objects falling from great heights and striking people below at a time that [city] knew or had reason to know of the special danger inherent in the work being performed and that [city] knew or had reason to know of the inherent danger at the time of the making of said contract."

In addition, Saggio alleges the city failed to comply with a portion of the Occupational Safety and Health Act pertaining to ladders and scaffolds. We note, however, nothing in that portion of OSHA requires overhead protection for people working on scaffolds. Rather, it pertains to scaffold

guard rails and toeboards. Saggio does not allege the $2 \times 4$ fell from a scaffold. Thus, this OSHA requirement is not pertinent to the other facts pled.

## II. Specific negligence

For his first point relied on, Saggio alleges trial court error in dismissing his petition "because the petition stated a valid cause of action based upon the negligence of [city]." He contends his allegation that the city "failed to take precautions against the risk of objects falling from great heights and striking people below" is sufficient to state a claim against the city.

■ In his brief, he argues since the petition states Saggio was injured and his injury was the direct and proximate result of city's negligence, these "facts show [Saggio] is entitled to relief." Such argument, however, ignores the general rule that a landowner who contracts with an independent contractor to do work is not liable for physical injury caused to another by the tortious act or omission of the independent contractor or its employees. *Hofstetter v. Union Elec. Co.*, 724 S.W.2d 527, 529–30 (Mo.App.E.D.1987).

In his reply brief, for the first time, Saggio claims his allegation pertains to the city's retention of possession of land or the city's retention of control of any part of the work. RESTATEMENT (SECOND) OF TORTS, §§ 422 and 414 (1965). Nothing in the petition, however, alleges the city retained possession of the land or any control of any part of the work. Saggio's first point is denied.

## II. Inherently Dangerous Activity

Although Saggio's brief contains two other points relied on, his brief essentially raises only one other issue. That issue is his claim the petition states a cause of action based on the inherently dangerous doctrine.

■ "Generally, one who contracts with an independent contractor to perform work is not liable for bodily injury caused by the contractor or one of its employees." *Barbera v. Brod–Dugan Co.*, 770 S.W.2d 318, 322 (Mo.App.E.D.1989). However, "if *the work contracted for* is an 'inherently dangerous activity,'" the owner remains liable for the torts of the independent contractor. *Ballinger v. Gascosage Elec. Co-op*, 788 S.W.2d 506, 511 (Mo. banc 1990) (emphasis added). The owner "is liable because it contracted for the work." *Id.*

To be inherently dangerous, the work contracted for must, by its very nature, involve some "peculiar risk" of physical harm. "A peculiar risk is differentiated from a 'common risk' in that common risks are those to which persons in general are subjected by the ordinary forms of negligence which are typical in the community." *Hofstetter*, 724 S.W.2d at 530.

The "inherently dangerous" doctrine "seems to be limited to work in which there is a high degree of risk in relation to the particular surroundings, or some rather specific risk or set of risks to those in the vicinity, recognizable in advance as calling for definite precautions." W. PROSSER & W. KEETON, THE LAW OF TORTS 514 (5th ed. 1984). The emphasis is "upon the 'peculiar' character of the risk, and the need for special, unusual care." *Id.* Or, as stated in *Ballinger*, the "essence of inherent danger ... is the need for special precaution." *Ballinger*, 788 S.W.2d at 509.

■ The facts alleged in Saggio's petition do not bring this case within the doctrine. The work contracted for, i.e. the construction of a city hall, does not involve a 'peculiar' risk. Nor does the construction of a city hall require "special precaution." *Compare Ballinger*, 788 S.W.2d at 508 (contract required installation of new poles and electric lines while existing line energized) *.

Further, the danger to which Saggio was exposed, i.e. other workers dropping tools or material, was no more than an ordinary and customary danger of construction

---

\* *Compare* also *Nance v. Leritz*, 785 S.W.2d 790 (Mo.App.E.D.1990) (contract for tuckpointing of a 100–year–old office building).

work. "To hold that the activity in this case falls within the exception would be to hold that all the construction work is *per se* inherently dangerous." *Hofstetter*, 724 S.W.2d at 531. As we have previously recognized, "routine construction work involves an element of risk for those who perform it." *Nance v. Leritz*, 785 S.W.2d 790, 792 (Mo.App.E.D.1990).

Saggio's petition failed to state a claim against the city under the inherently dangerous activity doctrine. The trial court did not err in sustaining the motion to dismiss.

The judgment is affirmed.

PUDLOWSKI, P.J., and KAROHL, J., concur.